# EXHIBIT A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

HISCOX INSURANCE COMPANY, an Illinois Corporation, and
DOES 1-10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

FRIENDFINDER NETWORKS INC., a Delaware Corporation

E-FILED
7/19/2018 1:16 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
18CV332034
Reviewed By: R. Tien
Envelope: 1741965

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

The name and address of the court is:
*(El nombre y dirección de la corte es):*  Downtown Superior Court (DTS)

191 North First Street, San Jose, California  95113

CASE NUMBER:
*(Número del Caso):*  18CV332034

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Michael Bruce Abelson and Heather L. Mayer of ABELSON HERRON HALPERN LLP
333 South Grand Avenue, Suite 1550, Los Angeles, California  90071  Tel: (213) 402-1900

DATE: July 19., 2018         Clerk of Court         Clerk, by   R. Tien                    , Deputy
*(Fecha)*                                     *(Secretario)*                               *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ABELSON HERRON HALPERN LLP
   Michael Bruce Abelson (State Bar No. 130739)
   Heather L. Mayer (State Bar No. 210544)
333 South Grand Avenue, Suite 1550
Los Angeles, California  90071-1559
Telephone: (213) 402-1900
Facsimile:  (213) 402-1901
mabelson@abelsonherron.com
hmayer@abelsonherron.com

Attorneys for Plaintiff
FriendFinder Networks Inc.

E-FILED
7/19/2018 1:16 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
18CV332034
Reviewed By: R. Tien

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SANTA CLARA

| | |
|---|---|
| FRIENDFINDER NETWORKS INC., a Delaware Corporation,<br><br>               Plaintiff,<br><br>      v.<br><br>HISCOX INSURANCE COMPANY, an Illinois Corporation, and DOES 1-10, inclusive,<br><br>              Defendants. | CASE NO.  18CV332034<br><br>Case Filed:  July 17, 2018<br>Assigned to:<br><br><br>**COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; DECLARATORY RELIEF**<br><br>***JURY TRIAL DEMANDED*** |



Plaintiff FriendFinder Networks Inc. ("FFN") for its Complaint against Defendant Hiscox Insurance Company, Inc. ("Hiscox"); and Does 1 through 10, inclusive, alleges as follows:

<p style="text-align:center"><strong><u>SUMMARY</u></strong></p>

1. This insurance coverage action concerns the wrongful refusal of Defendant Hiscox to properly indemnify Plaintiff FFN for a loss incurred as a result of an employee's theft at FFN's headquarters in Campbell, California.

2. At all times relevant to this action, FFN had in place – and had paid thousands of dollars in premiums to secure – insurance coverage from Hiscox that was specifically designed to protect and reimburse FFN for losses caused by employee theft. As a result of Hiscox's breach of its policy obligations, FFN has been unable to recoup millions of dollars stolen from its coffers.

3. Adding insult to injury is Hiscox's steadfast refusal to issue a coverage determination. In essence, Hiscox refuses to adjust FFN's loss or even state the reasons for its nonpayment. This is particularly troublesome because Hiscox has received thousands of pages of FFN documents, participated in innumerable calls and conducted fact-to-face meetings with FFN personnel regarding the subject of FFN's loss. Despite all its purported fact-finding, the insurer has determined to stand, mute, thus effectively denying FFN Policy benefits. To be sure, Hiscox's refusal to issue a coverage determination and reimburse FFN for its employee's theft was wrongful, and without a reasonable basis in either fact or law.

4. FFN brings this action to vindicate its policy rights, to force Hiscox to acknowledge its payment obligation and to recover the millions of dollars in insured losses. FFN also seeks additional and further relief on account of Hiscox's unreasonable withholding of its coverage determination and failure to provide coverage, all of which deprived FFN of insurance coverage that is due and owing, and caused FFN to incur other damages, including attorneys' fees required to secure Policy benefits.

<p style="text-align:center"><strong><u>THE PARTIES</u></strong></p>

5. Plaintiff FriendFinder Networks Inc. ("FFN"), is, and at all times material to this action was, a corporation organized and existing under and by virtue of the laws of the State of



1   Delaware.  FFN maintains corporate offices in Santa Clara County, California and, from there,

2   FFN conducts business, including, but not limited to, marketing activities and affiliate programs

3   that are the subject of this coverage action.

4         6.     Defendant Hiscox Insurance Company, Inc. ("Hiscox") is, and at all times

5   material to this action was, a corporation organized and existing under and by virtue of the laws

6   of the State of Illinois.  At all times material to this action, Hiscox was qualified to transact, and

7   did transact, the business of insurance in Santa Clara County, California.

8         7.     FFN does not know the true names and capacities, whether individual, associate,

9   corporate or otherwise of Defendant DOE 1 through DOE 10, inclusive, and Plaintiff therefore

10   sues these DOE defendants by such fictitious names and will amend this complaint to show their

11   true names and capacities when the same are ascertained.  Plaintiff is informed and believes, and

12   based thereupon alleges, that Defendant DOE 1 through DOE 10, inclusive, and each of them,

13   were in some manner responsible or legally liable for the events, actions, transactions and

14   circumstances alleged herein.

15   <div align="center">**JURISDICTION AND VENUE**</div>

16         8.     This Court has jurisdiction over Hiscox because it transacted business, including

17   the business of insurance, in Santa Clara County throughout the relevant time period.  Likewise,

18   Hiscox was required to render coverage to FFN whose risk management functions for the

19   employee theft were and are based in Santa Clara County.

20         9.     Venue is proper in this Court pursuant to Section 395(a) of California's Code of

21   Civil Procedure, inasmuch as the insurance and other obligations at the heart of this action were

22   entered into, performed and/or breached in Santa Clara County, California.

23   <div align="center">**THEFT BY FFN EMPLOYEES**</div>

24       **A.**    **FFN's Business**

25         10.    FFN operates multiple dating websites under a variety of brands.  Its largest and

26   most heavily trafficked website is AdultFriendFinder.com.  Creating an account on one of FFN's

27   websites is free, but accessing other users' profiles and the full features of its websites requires a

28   paid membership.



<div align="center">2</div>

11.     New customers find FFN's websites through various methods.  Relevant here is the attraction of new customers to FFN's site when they click on an advertisement on the website of an affiliated third-party ("FFN Affiliate").  Independently-owned and operated, FFN Affiliates have a contractual relationship with FFN and receive compensation from FFN for directing traffic to FFN websites, subject to the terms and conditions of their agreements with FFN ("FFN Affiliate Agreements").

**B.     FFN's Marketing Strategy**

12.     A critical component of FFN's overall marketing strategy is the use of keywords that potential customers are likely to use when searching for dating websites like those operated by FFN.  Keywords are individual words, phrases, or a combination of words that people input into search engines describing the goods or services they seek – *e.g.,* "single," "non-smoking," "athletic."  Given the importance of these keywords, search engines like Google and Bing aim to maximize their value by auctioning off the right to have web traffic directed to websites who purchase these valuable terms.

13.     To ensure the integrity of its business model, FFN's Affiliate Agreements prohibit FFN Affiliates from bidding on keywords that include FFN's trademarks and common derivations of those marks.  This only makes sense, because FFN already owns the rights to these proprietary terms.  To allow FFN Affiliates to bid on them in the auction process would result in FFN paying FFN Affiliates for web traffic (*i.e.*, customers) using FFN's own intellectual property.

14.     In an effort to monitor the auction process (and eliminate unauthorized keyword payments), FFN uses a third-party vendor to track winning keyword auctions.  Each day FFN's vendor provides a report showing the results of keyword search term auctions won by ***non***-FFN entities.  FFN reviews this report to confirm that none of its FFN Affiliates is bidding on FFN's trademarked keywords in violation of their FFN Affiliate Agreements.

**C.     FFN's Own Employees' Conspiracy And Theft**

15.     Wei Lai was employed by FFN as the Senior Search Engine Marketing Manager from May 7, 2007 to July 18, 2017.  Mr. Lai was the primary individual responsible for



reviewing FFN's keyword report and auction results.  His resulting analysis was provided to FFN's upper management.

16.     In July 2017, Mr. Lai was terminated for cause after FFN discovered that he – along with other current and former FFN employees – created fake affiliates and, further, was manipulating data provided to FFN's keyword monitor.  The upshot of this conspiracy was such that Lai (who maintained a stake in the fake affiliates) was "blinding" FFN to the fact that the fake affiliates were bidding on FFN's keywords, thereby causing FFN to improperly pay millions of dollars in customer acquisition costs.  These fraudulent affiliates were operated by Essential Clicks (run by FFN former employee, Thanh Diec and his wife), Butec (run by FFN former employee, Ken McKoon and his wife), Jason Lee, Justin Wang, and Dorra Wang (along with Wei Lai, the "Conspirators").

17.     Had FFN known of the Conspirators' misconduct, FFN would not have paid any referral fees to the phony Affiliates.

18.     As a result of the Conspirators' misconduct, FFN made payments of almost $3 million to the fraudulent FFN Affiliates.

19.     Lai and several other former employees are now the subject of a criminal complaint pending in this Court.

**THE HISCOX INSURANCE POLICY AND FFN'S REQUEST FOR COVERAGE**

20.     As part of its comprehensive risk management program, FFN purchased and maintained insurance coverage to guard against unanticipated losses, such as employee theft.

21.     For the time period December 20, 2016 to December 20, 2017, Hiscox issued to FFN its Commercial Crime Insurance Policy number UC21870977.16 with limits of $5 million (the "Hiscox Policy").  A true and correct copy of the Hiscox Policy is attached hereto as Exhibit A and incorporated herein by reference.

22.     The Hiscox Policy specifically provides FFN with coverage for liability for employee thefts such as those described above.



COMPLAINT

**9**

23.     FFN discovered the Conspirators' scheme on or about July 12, 2017.  At that time, FFN conducted additional research to determine the scope of their misconduct and the magnitude of their resulting theft.

24.     Shortly thereafter, on August 2, 2017, FFN contacted its insurance broker, Marsh USA, Inc. ("Marsh") to provide a summary of the theft.

25.     On August 3, 2017, Marsh submitted a Notice of Claim on FFN's behalf to Hiscox's Claims Department.  Soon thereafter, Hiscox embarked on a campaign to frustrate, delay, and evade timely processing of FFN's claim with the overall intention of thwarting FFN's right to full policy benefits.

26.     Step one of Hiscox's campaign was to immediately retain counsel.  Indeed, on August 8, 2017, Robert McCall from the Boston law firm of Peabody & Arnold sent a letter to FFN's general counsel acknowledging Hiscox's receipt of FFN's claim and requesting additional information, including a Proof of Loss within 120 days.  Exactly why Hiscox felt it needed coverage counsel upon receiving FFN's claim is unknown.  As FFN later learned, however, the insurer's attorneys were soon a favored tool of oppression.

27.     Upon receipt of the insurer's initial request, FFN (with Hiscox's approval) retained Marsh Risk Consulting's Forensic Accounting and Claims Services Practice to assist with its preparation of the Proof of Loss ("POL") and to ensure that its POL was thorough and comprehensive.  Indeed, FFN was so diligent in its investigation and documentation that it requested (and received) a 45-day extension of time to submit its POL, thereby ensuring that it contained all information necessary for Hiscox to promptly assess the claim and issue payment in an expedited manner.

28.     On January 22, 2018, FFN submitted a 14-page Proof of Loss detailing the theft, along with supporting evidence, including 21 separate exhibits totaling 706 pages and two detailed spreadsheets totaling 6,650 pages.

29.     Rather than immediately issuing a coverage determination as required by California Insurance Code Section 2695.7(b), Hiscox took its second step in its delay campaign

COMPLAINT

**10**

by retaining RSM US LLP ("RSM") to conduct a wholly unrelated investigation of FFN and its claim.

30.     As part of its purported investigation, RSM began by requesting an all-day meeting with FFN personnel and management, scheduled to take place on March 20, 2018 – two months after FFN's POL was originally tendered for payment.  Despite RSM's request that numerous FFN employees set aside a full day for this meeting, RSM personnel arrived nearly an hour late.  Then, after a cursory review of irrelevant matters, RSM took lunch.  It then returned to FFN's office, declared it had what it needed, and departed.  Nonetheless, no coverage determination followed.

31.     Instead, Hiscox pursued step three of its campaign of frustration and delay by and through RSM, and backstopped by its Boston attorneys.  Over the ensuing months, RSM made numerous requests for information that shed little, if any, light on Hiscox's coverage obligation.  Every time FFN responded, RSM would ask for more.  FFN would then respond again and, invariably, RSM would remain unsatisfied, demanding more.  And, when even these follow-up requests were fulfilled, RSM returned to ask for additional items.  More, more, more.

32.     During the period March 20, 2018 to April 18, 2018, RSM made 27 separate requests for information, all of which FFN dutifully responded to.

33.     Through it all, FFN sought to cooperate with Hiscox and RSM, and made every effort to respond to RSM's burdensome requests, providing extensive additional documentation:

- On March 23, 2018;
- On May 14, 2018;
- On June 15, 2018
- On June 22, 2018;
- On July 5, 2018;
- On July 9, 2018; and
- On July 10, 2018.

34.     Despite such production, it was never enough for Hiscox and its agents.  Each new FFN production of information was met with more questions, and even more requests for

COMPLAINT



11

1   additional, unrelated information.  Indeed, over the course of the period from March 20 to July

2   10, 2018, FFN provided RSM with hundreds of pages of additional, detailed internal documents

3   and thousands of pages of spreadsheets, in addition to the information previously submitted in

4   connection with its initial POL.

5       35.     Finally, in May 2018, after demanding a coverage determination for nearly four

6   months and receiving no indication any was forthcoming, FFN was forced to retain counsel to

7   enforce its rights.  On May 23, 2018, FFN, through its counsel, again demanded a coverage

8   determination.  A true and correct copy of that correspondence is attached hereto as Exhibit B.

9   In response, Hiscox attorneys called to discuss coverage finally.

10      36.     During a June 1 telephonic conference with Peabody & Arnold, FFN's attorneys

11  expressed – in no uncertain terms – that FFN needed a coverage determination from Hiscox, and

12  that there was no reasonable basis for further delay.

13      37.     Hiscox's attorneys, Peabody & Arnold refused to comply.  Instead, they claimed

14  additional information was absolutely necessary to its coverage investigation and that, absent

15  production, it could not process FFN's claims – even undisputed portions.

16      38.     Once again, Hiscox did not comply with California Insurance Code Section

17  2695.7(b) because it failed to issue a written coverage decision immediately and not later than 40

18  days after FFN's June 1 request.

19      39.     Although FFN disagreed additional information was needed, FFN determined to

20  avoid a stand-off by demanding Hiscox detail all missing information needed to finalize the

21  insurer's coverage decision.  Over the next six weeks, FFN's counsel had no less than four

22  additional telephone conferences with Peabody & Arnold and/or RSM and provided additional

23  (though unnecessary) "final" documentation as requested by Hiscox's agents.

24      40.     Despite all this, in July 2018 – after FFN had waited nearly <u>six months</u> for a

25  coverage determination – Hiscox claimed still <u>more</u> information was needed to render its

26  coverage opinion.  Exasperated, FFN made a last ditch effort to answer all of Hiscox's newly

27  articulated "questions" in the hope of receiving a prompt coverage determination.  Over the

28  course of a two-hour conference call with Peabody & Arnold and RSM, FFN management

COMPLAINT



1    sought to answer all of RSM's outstanding questions and to provide all additional information

2    requested by RSM.  But, alas, Hiscox remained unsatisfied.

3         41.    The stand-off between the parties came to a head on a July 10, 2018 conference

4    call, at which time FFN drew a line in the sand and demanded that Hiscox issue its coverage

5    determination on all undisputed aspects of FFN's January 22, 2018 POL.  The response from

6    Hiscox's counsel was telling:  silence.  For many seconds, no sound was heard was Hiscox's

7    agents.  Dead air.  And then the call abruptly ended.  It then became clear to FFN that Hiscox

8    had no intention of processing FFN's claim.  Despite FFN's efforts to placate and accommodate

9    the insurer, further cooperating was a fool's errand.  Hiscox had made up its mint to wrongfully

10   withhold FFN's coverage determination, and, with it, any Policy benefits.

11        42.    By filing this action, FFN seeks to end Hiscox's charade.  Indeed, as a result of

12   Hiscox's failure to issue a timely coverage determination and its ongoing failure to provide

13   benefits, FFN has yet to recover even a single dollar of the millions it lost as a result of the

14   employee theft, and Hiscox's improper gamesmanship.

15   <div align="center">**FIRST CAUSE OF ACTION**</div>

16   <div align="center">**(Breach of Contract)**</div>

17        43.    FFN incorporates the allegations of Paragraphs 1 through 42 of this Complaint,

18   inclusive, as though fully set forth herein.

19        44.    By its terms, Hiscox's Policy provides FFN coverage, up to $5 million, for

20   employee theft.

21        45.    On or about August 3, 2017, FFN, through its broker, tendered to Hiscox its claim

22   under Hiscox's Policy for employee theft.

23        46.    On January 22, 2018, FFN presented Hiscox with its Proof of Loss in the amount

24   of $2,961,244, consistent of $2,946,244 in losses and15,000 in claims preparation costs.

25        47.    To date, Hiscox has failed to pay FFN Policy benefits, to dispute any aspect of

26   FFN's POL or even to issue a coverage determination.  As a result of Hiscox's misconduct, FFN

27   has failed to receive a single penny from the insurer, even for undisputed sums.

28



48.     FFN is informed and believes, and thereon alleges, that the limits of liability of the Hiscox Policy are not exhausted and, in all events, were not exhausted at the time FFN requested coverage for the employee theft.

49.     FFN has performed each and every material obligation imposed upon it by Hiscox, except to the extent such performance was either prevented or excused by Hiscox.

50.     By failing to issue a coverage determination and failing to provide timely and proper coverage to FFN for the employee theft, Hiscox has breached its contractual obligations to FFN.

51.     As a direct and proximate result of Hiscox's breach, FFN has suffered damages in such amounts as will be proven at the trial of this action.

## SECOND CAUSE OF ACTION

### (Breach of the Covenant of Good Faith and Fair Dealing)

52.     FFN incorporates the allegations of Paragraphs 1 through 51 of this Complaint, inclusive, as though fully set forth herein.

53.     Hiscox wrongfully failed to issue a coverage determination to FFN and failed to provide coverage to FFN for the employee theft.  Hiscox's conduct was improper, unreasonable, and failed to give equal regard to the interests of FFN as it (obviously) gave its own interests.  By Hiscox's actions and inactions, Hiscox breached the covenant of good faith and fair dealing implied into its insurance policy by, among other things, the following:

a)      Refusing to timely issue a coverage determination as required by California Insurance Code Section 2695.7(b);

b)      Refusing to timely and fully acknowledge coverage obligations for the employee theft;

c)      Failing to communicate with FFN in a responsive and appropriate manner;

d)      Harassing its insured by repeatedly requesting information from FFN that was either already provided or wholly irrelevant for the purposes of determining coverage.



54.     As a proximate result of Hiscox's (mis)conduct, FFN has been damaged as heretofore alleged, and has incurred substantial additional costs including, but not limited to, attorneys' fees, expenses and costs to mitigate and remedy Hiscox's breach of its coverage obligations.  The full amount of such damages will be proven at the trial of the action of this matter.

55.     As alleged herein, Hiscox's conduct with respect to FFN was malicious, oppressive, and fraudulent, and taken in willful disregard of FFN's rights.  Consequently, FFN is entitled to recover punitive damages both to punish Hiscox for its transgressions and to deter others from engaging in similar, wrongful conduct.

### THIRD CAUSE OF ACTION

### (Declaratory Relief)

56.     FFN incorporates the allegations of Paragraphs 1 through 55 of this Complaint, inclusive, as though fully set forth herein.

57.     There presently exists an actual, justiciable controversy between FFN, on the one hand, and Hiscox, on the other hand, regarding Hiscox's obligation to reimburse FFN for its losses as a result of the employee theft:

        a)     For its part, FFN contends, among other things, that Hiscox has an obligation to provide insurance coverage, and must reimburse FFN for FFN's losses as a result of the employee theft;

        b)     FFN is informed and believes (and on that basis alleges) that Hiscox disputes the foregoing contention.

58.     FFN desires a judicial determination and declaration that its contentions set forth in Paragraph 57 are, in fact, correct.

59.     A judicial declaration is necessary and appropriate under the circumstances so that FFN, on the one hand, and Hiscox, on the other hand, may ascertain their respective rights and duties under the Hiscox Policy.



COMPLAINT

**15**

1    **WHEREFORE,** FFN prays for judgment as follows:

2    **On The First Cause of Action:**

3    1.    For compensatory damages in an amount to be proved at trial;

4    **On The Second Cause of Action:**

5    2.    For compensatory damages in an amount to be proved at trial;

6    3.    For punitive damages in an amount sufficient to punish and make an example of

7    the Defendant Insurer;

8    **On The Third Cause of Action**

9    4.    For a judicial declaration and order that FFN's loss of $2,961,244 under the

10   Policy must be timely reimbursed by Hiscox.

11   **On All Of The Causes of Action:**

12   5.    For its costs of suit incurred herein,

13   6.    For prejudgment and post judgment interest at the maximum legal rate on all

14   sums awarded; and

15   7.    For such other relief as the Court may deem just and proper.

16

17   Dated: July 17, 2018                    ABELSON HERRON HALPERN LLP
                                             Michael Bruce Abelson
18                                           Heather L. Mayer

19

20   By_____
                                             Heather L. Mayer
21                                           Attorneys for Plaintiff
                                             FriendFinder Networks Inc.
22

23

24

25

26

27

28



COMPLAINT

11

**16**

# EXHIBIT  A

# DECLARATIONS

**HISCOX**

## HISCOX INSURANCE COMPANY INC. (A Stock Company)

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

## Policy Number:   UC21870977.16

| | | | |
|---|---|---|---|
| Broker No.: | US 0001488 | Broker Name: | RT Specialty of Illinois, LLC |
| Policy No.: | UC21870977.16 | Broker Address: | 500 W. Monroe St., 30th Floor<br>Chicago, Illinois 60661 |
| Renewal of: | New | | |

### Commercial Crime Insurance Policy

**Named Insured:**      FriendFinder Networks, Inc.

**Mailing Address:**      610 E Hamilton Ave Ste 600
Campbell, California 95008-0645

**Policy Period:**      12/20/2016 to 12/20/2017

12:01 A.M. at Your mailing address shown above

| Insuring Agreements | Limit of Insurance<br>(Per Occurrence) | Deductible Amount<br>(Per Occurrence) |
|---|---|---|
| **Coverage A: Fidelity** | | |
| (1) Employee Theft | $ 5,000,000 | $ 50,000 |
| (2) ERISA (Limit Applies Per Plan) | $ 5,000,000 | N/A |
| (3) Clients' Property | $ 1,000,000 | $ 25,000 |
| (4) Vendor Theft | Not Covered | N/A |
| **Coverage B: Forgery or Alteration** | | |
| (1) Checks | $ 5,000,000 | $ 50,000 |
| (2) Credit, Debit or Charge Cards | $ 5,000,000 | $ 50,000 |
| (3) Personal Accounts | Not Covered | N/A |
| **Coverage C: Inside and Outside the Premises** | | |
| (1) Inside the Premises | $ 1,000,000 | $ 10,000 |
| (2) Outside the Premises | $ 1,000,000 | $ 10,000 |
| **Coverage D: Computer and Funds Transfer Fraud** | | |
| (1) Computer Fraud | $ 5,000,000 | $ 50,000 |
| (2) Funds Transfer Fraud | $ 5,000,000 | $ 50,000 |
| **Coverage E: Money Orders and Counterfeit Money** | $ 1,000,000 | $ 5,000 |
| **Coverage F: Telephone Toll Fraud** | Not Covered | N/A |
| **Coverage G: Identity Fraud Expense** | Not Covered | N/A |
| **Coverage H: Virus and Licensing Violations** | | |
| (1) Virus Restoration | Not Covered | N/A |
| (2) Licensing Violation Fines and Penalties | Not Covered | N/A |
| **Coverage I: Expense** | $ 100,000 | N/A |

Coverage is provided only if an amount is shown opposite an Insuring Agreement.  If the amount is left blank or "Not Covered" is inserted, such Insuring Agreement and any other reference thereto in this policy is deleted.



**DECLARATIONS**

# HISCOX

## HISCOX INSURANCE COMPANY INC. (A Stock Company)

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

**Policy Number:   UC21870977.16**

**Endorsements Forming Part Of This Policy When Issued:**

   (1) E9647.1. Subsidiary Definition Amended
   (2) E9703.1. California Amendatory Endorsement
   (3) E9649.1. ERISA Bond Coverage
   (4) E9654.1. Cyber Deception Endorsement
   (5) E9609.1. Executive Employee Amended
   (6) E9629.1. Prior Dishonesty Threshold Amended

**Cancellation Of Prior Insurance Issued By Us:**

By acceptance of this Policy you give us notice cancelling prior policy Nos.
N/A ; the cancellation to be effective at the time this Policy becomes effective.

**Total Premium:**     $ 23,651.00

**Notice of Claim to:**    **Hiscox**
              **Attn: Crime & Fidelity Claims Dept.**
              **520 Madison Avenue, 32nd Floor New York, NY 10022**
              **Email - d&oclaims@hiscox.com**
              **Fax - 212-922-9652**

**CRI D001 CW (06/10)**

# HISCOX

## DECLARATIONS

## HISCOX INSURANCE COMPANY INC. (A Stock Company)

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

## Policy Number:   UC21870977.16

IN WITNESS WHEREOF, the Insurer indicated above has caused this Policy to be signed by its President and Secretary, but this Policy shall not be effective unless also signed by our duly authorized representative.

President

Secretary

Authorized Representative

12/19/2016

Date



## Crime Insurance
Policy Form

**Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is or is not covered.  Those words (other than the words in the captions) which are printed in Boldface are defined in the Policy.**

In return for the payment of premium, subject to all the terms and conditions of this policy, and in reliance upon the statements made by **You** in the Application, which forms a part of this Policy, **We** agree with **You** to provide the insurance as stated in this policy:

**I. Insuring Agreements**     Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations and applies to loss that **You** sustain resulting directly from an **Occurrence** taking place at any time which is **Discovered** by **You** or an **Executive Employee** during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period To Discover Loss Condition:

**Coverage A:  Fidelity**

(1)  Employee Theft

**We** will pay for loss of or damage to **Money**, **Securities** and **Other Property** resulting directly from **Theft** and/or **Forgery** committed by an **Employee**, whether identified or not, acting alone or in collusion with other persons.

(2)  ERISA

**We** will pay, directly to an **Employee Benefit Plan**, for loss of or damage to **Money**, **Securities** and **Other Property** resulting directly from fraudulent or dishonest acts committed by a **Fiduciary** of any **Employee Benefit Plan**, whether identified or not, acting alone or in collusion with other persons.

The Limit of Insurance shown in the Declarations for Coverage A(2) ERISA shall apply to each and every **Employee Benefit Plan** sustaining such loss or damage. In the event of an **Occurrence** involving both Coverage A(1) Employee Theft and Coverage A(2) ERISA, the Limit of Insurance shown in the Declarations for Coverage A(2) shall be in addition to the Limit of Insurance shown for Coverage A(1) Employee Theft.

If the Limit of Insurance for Coverage A(2) ERISA no longer complies with the minimum amount of coverage required for such **Employee Benefit Plan(s)** under ERISA (unless the Limit of Insurance no longer complies due to investment in non-qualified assets), but which would have complied at the time the Policy was issued, **We** agree to increase the Coverage A(2) ERISA Limit of Insurance with regard to such **Employee Benefit Plan(s)** so as to equal the minimum amount of coverage required under ERISA.

The Deductible Amount does not apply to Coverage A(2) ERISA.

(3)  Clients' Property

**We** will pay for loss of or damage to **Money**, **Securities** and **Other Property** sustained

Includes copyrighted material of Insurance Services Offices, Inc., with its permission.



# Crime Insurance
Policy Form

by **Your Client** resulting directly from **Theft** and/or **Forgery** committed by an identified **Employee**, acting alone or in collusion with other persons, including an **Employee** in collusion with an **Employee** of **Your Client**.

(4)  Vendor Theft

**We** will pay for loss of or damage to **Money**, **Securities** and **Other Property** resulting directly from **Theft** committed by an identified **Employee** of **Your Vendor** (other than one with an ownership interest of greater than 25% in the **Vendor**) acting alone or in collusion with other persons.

This coverage shall only apply to the amount of loss **You** cannot recover under the contract with the **Vendor** and from any insurance or indemnity carried by, or for the benefit of the **Vendor** or customers of the **Vendor**.

The Limit of Insurance shown for Coverage A(4) Vendor Theft shall be part of, not in addition to, the Limit of Insurance shown for Coverage A(1) Employee Theft.

The following Condition applies to Coverage A and all subparts:

(i)  All subparts of Coverage A terminate as to any **Employee** as soon as an **Executive Employee** not in collusion with the **Employee** learns of **Theft**, **Forgery** or any other dishonest act committed by the **Employee**:

(1)  after becoming employed by You; or

(2)  if such **Theft**, **Forgery** or dishonest act exceeded $10,000, before becoming employed by **You**.

## Coverage B:  Forgery or Alteration

(1)  Checks

**We** will pay for loss resulting directly from **Forgery** or alteration of checks, drafts, promissory notes, convenience checks, HELOC checks, or similar written promises, orders or directions to pay a sum certain in **Money** that are:

(i)  Made or drawn by or drawn upon **You**; or

(ii)  Made or drawn by one acting as **Your** agent;

or that are purported to have been so made or drawn.

(2)  Credit, Debit or Charge Cards

**We** will pay for loss resulting directly from **Forgery** or alteration of written instruments required in conjunction with any credit, debit, convenience, stored-value or charge card issued to **You** or any **Employee** for business purposes as long as **You** or the **Employee** have complied fully with the provisions, conditions or other terms under which the credit, debit, convenience, stored-value or charge card was issued.

(3)  Personal Accounts

**We** will pay for loss resulting directly from **Forgery** or alteration of checks, drafts, promissory notes, convenience checks, HELOC checks, or similar written promises,

Includes copyrighted material of Insurance Services Offices, Inc., with its permission.

Page 2 of 24

CRI P001 CW (06/10)

22



# Crime Insurance
## Policy Form

orders or directions to pay a sum certain in **Money** that are made or drawn by or drawn upon a personal account of an **Executive Employee** or that are purported to have been so made or drawn.

The following Conditions apply to Coverage B and all subparts:

(i)   A substitute check as defined in the Check Clearing for the 21st Century Act shall be treated the same as the original it replaced;

(ii)  **S**ignatures that are produced or reproduced electronically, mechanically or by other means shall be treated the same as handwritten signatures;

(iii) **You** must include with **Your** proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss;

(iv)  If **You** are sued for refusing to pay any instrument covered above on the basis that it has been forged or altered, and **You** have **Our** written consent to defend against the suit, **We** will pay for any reasonable legal expenses that **You** incur and pay in that defence.  The amount that **We** will pay is in addition to the Limit of Insurance applicable to this Insuring Agreement.  The Deductible Amount does not apply to legal expenses paid under this paragraph.

**Coverage C:  Inside and Outside the Premises**

(1)  Inside the Premises

(i)   **We** will pay for loss of **Money** and **Securities** inside the **Premises** or **Banking Premises**:

(1)  resulting directly from **Theft** committed by a person present inside such **Premises** or **Banking Premises**; or

(2)  resulting directly from disappearance or destruction.

(ii)  **We** will pay for loss of or damage to **Other Property**:

(1)  inside the **Premises** resulting directly from an actual or attempted **Robbery** of a **Custodian**; or

(2)  inside the **Premises** in a safe or vault resulting directly from an actual or attempted **Safe Burglary**.

(iii) **We** will pay for loss from damage to the **Premises** or its exterior resulting directly from an act covered by paragraph (i**)** or (ii**)** if **You** are the owner of the **Premises** or are liable for damage to it.

(iv)  **We** will pay for loss of or damage to a locked safe, vault, cash register, cash box or cash drawer located inside the **Premises** resulting directly from an actual or attempted **Theft** of or unlawful entry into those containers.

(2)  Outside the Premises

(i)   **We** will pay for loss of **Money** and **Securities** outside the **Premises** in the

Includes copyrighted material of Insurance Services Offices, Inc., with its permission.



## Crime Insurance
Policy Form

    care and custody of a **Messenger** or an armored motor vehicle company resulting directly from **Theft**, disappearance or destruction

(ii) **We** will pay for loss of or damage to **Other Property** outside the **Premises** in the care and custody of a **Messenger** or an armored motor vehicle company resulting directly from an actual or attempted **Robbery**.

The following Condition applies to Coverage C and all subparts:

**We** will only pay:

(i) for the amount of loss **You** cannot recover under **Your** contract with the armored motor vehicle company and from any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

(ii) up to $10,000 for any one **Occurrence** of loss or damage to:

    (1) precious metals, precious or semi-precious stones, pearls, furs or completed or partially completed articles made of or containing such materials that constitute the principal value of such articles.

    (2) Manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

### Coverage D:  Computer and Funds Transfer Fraud

(1) Computer Fraud

**We** will pay for loss of or damage to **Money**, **Securities** and/or **Other Property** resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the **Premises** or **Banking Premises**:

(i) to a person (other than a **Messenger**) outside those **Premises** or **Banking Premises**; or

(ii) to a place outside those **Premises** or **Banking Premises**.

**We** will only pay up to $10,000 for any one **Occurrence** of loss or damage to manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

(2) Funds Transfer Fraud

**We** will pay for loss of **Money** and **Securities** resulting directly from a **Fraudulent Instruction** directing a financial institution to transfer, pay or deliver **Money** and **Securities** from **Your Transfer Account**.

### Coverage E:  Money Orders and Counterfeit Money

**We** will pay for loss resulting directly from **Your** having accepted in good faith, in exchange for merchandise, **Money** or services:

(i) money orders issued by any post office, express company or bank that are not paid upon presentation; or

(ii) **Counterfeit Money** that is acquired during the regular course of business.

Includes copyrighted material of Insurance Services Offices, Inc., with its permission.



# Crime Insurance
Policy Form

### Coverage F:  Telephone Toll Fraud

**We** will pay for loss from long distance telephone charges incurred by **You** resulting directly from fraudulent use or fraudulent manipulation of an **Account Code** or **System Password** required to gain access into **Your Voice Computer System**, provided such loss did not result from the failure to:

(i)   install and maintain in operating condition a call disconnect feature to terminate a caller's access after three unsuccessful attempts to enter an **Account Code**;

(ii)   incorporate a **System Password**; or

(iii)   change a **System Password** every 60 days.

**We** will only pay for loss resulting from toll call charges made on telephone lines directly controlled by one **Voice Computer System** occurring for a period of not more than 30 days inclusive of the date on which the first such toll call charges were made.

### Coverage G:  Identity Fraud Expense

**We** will pay for **Identity Fraud Expenses** incurred by **You** or any **Executive Employee** resulting directly from **Identity Fraud**.

### Coverage H:  Virus and Licensing Violations

(1)  Virus Restoration

**We** will pay for costs that **You** incur to restore or replace damaged or destroyed **Electronic Data** or **Computer Programs** stored within **Your Computer System** resulting directly from:

(i)   a virus directed solely against **You** designed to damage or destroy **Electronic Data** or **Computer Programs** and introduced maliciously by a natural person; or

(ii)   vandalism by a person who has gained unauthorized access to **Your Computer System**;

including reasonable costs that **You** incur to restore **Your Computer System** to the level of operational capability that existed before the virus or vandalism occurred.

(2)  Licensing Violation Fines and Penalties

**We** will pay for fines and penalties that **You** incur resulting directly from the unauthorized reproduction of computer software by an **Employee**, in violation of a licensing agreement with a third party vendor, provided the unauthorized reproduction is done:

(i)   without **Your** or an **Executive Employee's** knowledge;

(ii)   without the knowledge of any other person having responsibility for compliance with the terms of the software licensing agreement;

Includes copyrighted material of Insurance Services Offices, Inc., with its permission.



## Crime Insurance
Policy Form

and **You** are legally liable for the loss.

**Coverage I:  Expense**

**We** will reimburse **You** for reasonable costs, fees or other expenses that **You** incur and pay to an independent accounting, auditing or other service (which is not a **Client**) used to determine the existence or amount of loss covered under this insurance with **Our** prior written consent.

Any expense payable to **You** is only applicable to a covered loss which exceeds the Deductible Amount subject to such covered loss.

Any expense payable to **You** is part of, not in addition to, the Limit of Insurance subject to such covered loss.

**II. Definitions**

A. **Account Code** means a confidential and protected string of characters that identifies or authenticates a person and permits that person to gain access to **Your Voice Computer System** for the purpose of making long distance toll calls or utilizing voice mail box messaging capabilities or similar functional features of the system.

B. **Banking Premises** means the interior of that portion of any building occupied by a financial institution or similar safe depository including a night depository chute, ATM machine owned by such financial institution (wherever located) or safe of such institution.

C. **Client** means any entity to which **You** provide goods or services under a written agreement.

D. **Computer Programs** means a set of related electronic instructions which direct the operations and functions of a computer or devices connected to it which enable the computer or devices to receive, process, store, retrieve or send **Electronic Data**.

E. **Computer System** means:

    (i)  computers and related peripheral components;

    (ii)  systems and applications software;

    (iii)  terminal devices; and

    (iv)  related communications networks;

    by which **Electronic Data** is received, processed, stored, retrieved or sent.

F. **Counterfeit Money** means an imitation of **Money** that is intended to deceive and to be taken as genuine.

G. **Custodian** means **You**, or any of **Your** partners or **Members**, or any **Employee** while having care and custody of property inside the **Premises**, excluding any person while acting as a **Watchperson** or janitor unless such person is also an **Employee**.

Includes copyrighted material of Insurance Services Offices, Inc., with its permission.



# Crime Insurance
## Policy Form

H.  **Discover** or **Discovered** means the time when **You** or an **Executive Employee** first becomes aware of facts which would cause a reasonable person to assume that a loss of a type covered by this Policy has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

    **Discover** or **Discovered** also means the time when **You** or an **Executive Employee** first receive notice of an actual or potential claim in which it is alleged that **You** are liable to a third party under circumstances which, if true, would constitute a loss under this Policy.

I.  **Electronic Data** means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, DVDs, Blu-ray Discs, flash drives, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment.

J.  **Employee** means any:

    (i)   natural person:

        (1)   while in **Your** service and for the first 60 days immediately after termination of service, unless such termination is due to **Theft**, **Forgery** or any other dishonest act committed by the **Employee**;

        (2)   who **You** compensate directly by salary, wages or commissions; and

        (3)   who **You** have the right to direct and control while performing services for **You**;

    (ii)  temporary **Employee**;

    (iii)  natural person who is leased to **You**;

    (iv)  natural person who is a former **Employee**, partner, **Member**, **Manager**, director or trustee retained as a consultant while performing services for **You**;

    (v)   natural person who is a guest student or intern;

    (vi)  of **Your Managers**, directors or trustees while performing acts within the usual duties of an **Employee**;

    (vii) non-compensated officer;

    (viii)volunteer;

    (ix)  committee member;

    (x)   **Employee** on military, disability, family medical or similar leave; and

    (xi)  **Fiduciary**, but only as respects Coverage A(2) ERISA;

    **Employee** does not mean any agent (regardless of whether or not there is a written agreement as specified in the definition of **Vendor**), broker, factor, commission merchant, consignee, independent contractor or representative or

Includes copyrighted material of Insurance Services Offices, Inc., with its permission.

Page 7 of 24

CRI P001 CW (06/10)

27



# Crime Insurance
Policy Form

person of the same general character not specified above.

K. **Employee Benefit Plan** means any welfare or pension benefit plan that is sponsored by **You** whether or not such plan is subject to the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.

L. **Executive Employee** means **Your** proprietor, natural person partner, member of the board of directors, member of the board of trustees, **Member**, **Manager**, officer and any **Employee** in a risk management, general counsel, insurance or human resources department or function.

   (i) Solely with respect to Coverage A(2) ERISA, **Executive Employee** shall also include a **Fiduciary**.

   (ii) Solely with respect to Coverage G Identity Fraud Expense, **Executive Employee** shall also include any spouse, child under the age of 18 or relative living in the household of any **Executive Employee**.

M. **Fiduciary** means any natural person who is a trustee, officer, **Employee**, administrator or manager, except an administrator or manager who is an independent contractor of any **Employee Benefit Plan**; and a director or trustee of **Yours** while that person is engaged in handling **Money**, **Securities** or **Other Property** of any **Employee Benefit Plan**.

N. **Forgery** means the signing of the name of another person or organization with the intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

O. **Fraudulent Instruction** means

   (i) an electronic, telegraphic, cable, teletype, telefacsimile or telephone instruction which purports to have been transmitted by **You**, but which was in fact fraudulently transmitted by someone else without **Your** knowledge or consent;

   (ii) a written instruction (other than those described in Coverage B) issued by **You**, which was forged or altered by someone other than **You** without **Your** knowledge or consent, or which purports to have been issued by **You**, but was in fact fraudulently issued without **Your** knowledge or consent; or

   (iii) an electronic, telegraphic, cable, teletype, telefacsimile, telephone or written instruction initially received by **You** which purports to have been transmitted by an **Employee** but which was in fact fraudulently transmitted by someone else without **Your** or the **Employee's** knowledge or consent.

P. **Identity Fraud** means the act of knowingly transferring or using, without lawful authority, a means of identification of **Your** business or any covered individual with the intent to commit, or to aid or abet another to commit, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

Includes copyrighted material of Insurance Services Offices, Inc., with its permission.



# Crime Insurance
## Policy Form

Q. **Identity Fraud Expenses** means:

    (i)     advertising and public relations expenses incurred by **You** to restore **Your** business reputation as a result of an **Identity Fraud**;

    (ii)    costs incurred by **You** or any covered individual for notarizing affidavits or similar documents attesting to fraud required by financial institutions or similar credit grantors or credit agencies;

    (iii)   costs incurred by **You** or any covered individual for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors;

    (iv)   costs incurred by **You** or any covered individual for obtaining credit reports;

    (v)    lost income incurred by **You** or any covered individual resulting from time taken off work to complete fraud affidavits, meet with or talk to law enforcement agencies, credit agencies and/or legal counsel, up to a maximum payment of $250 per day.  Total payment for lost income is not to exceed $10,000 or the Limit of Insurance shown in the Declarations, whichever is less;

    (vi)   loan application fees, incurred by **You** or any covered individual for reapplying for a loan when the original application is rejected solely because the lender received incorrect credit information;

    (vii)   reasonable attorney fees to:

        (1)    defend lawsuits brought against **You** by merchants, vendors, suppliers, financial institutions or their collection agencies;

        (2)    remove any criminal or civil judgements wrongly entered against **You**; and

        (3)    challenge the accuracy or completeness of any information in a consumer credit report for **You**;

    (viii) charges incurred by **You** or any covered individual for long distance telephone calls to merchants, vendors, suppliers, customers, law enforcement agencies, financial institutions or similar credit grantors, or credit agencies to report or discuss an actual **Identity Fraud**; and any other reasonable expenses incurred by **You** or any covered individual with **Our** written consent.

R. **Manager** means a person serving in a directorial capacity for a limited liability company.

S. **Member** means an owner of a limited liability company represented by its membership interest, who also may serve as a **Manager**.

T. **Messenger** means **You**, or a relative of **Yours**, or any of **Your** partners or **Members**, or any **Employee** while having care and custody of property outside the **Premises**.

Includes copyrighted material of Insurance Services Offices, Inc., with its permission.



# Crime Insurance
## Policy Form

U. **Money** means:

    (i)   currency, coins, and bank notes in current use anywhere in the world and having a face value;

    (ii)  bullion; and

    (iii) traveller's checks, register checks and money orders held for sale to the public.

V. **Occurrence** means:

    (i)   Under Coverage A Fidelity and H(2) Fines and Penalties:

        (1)  an individual act;

        (2)  the combined total of all separate acts whether or not related; or

        (3)  a series of acts whether or not related;

        committed by an **Employee**, **Fiduciary** or **Vendor Employee** acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, before such Policy Period or both.

    (ii)  Under Coverage B Forgery or Alteration:

        (1)  an individual act;

        (2)  the combined total of all separate acts whether or not related; or

        (3)  a series of acts whether or not related;

        committed by a person acting alone or in collusion with other persons, involving one or more instruments, during the Policy Period shown in the Declarations, before such Policy Period or both.

    (iii) Under Coverage H(1) Virus Restoration paragraph (i):  As respects a virus, all covered costs incurred by **You** between the time the damage or destruction is **Discovered** and the time **Your Computer System** is restored to the level of operational capability that existed before the virus occurred.  Recurrence of the same virus after **Your Computer System** has been restored shall constitute a separate occurrence.

    (iv) Under all other coverages:

        (1)  an individual act or event;

        (2)  the combined total of all separate acts or events whether or not related; or

        (3)  a series of acts or events whether or not related;

        committed by a person acting alone or in collusion with other persons, or not committed by any person, during the Policy Period shown in the Declarations, before such Policy Period or both.

W. **Other Property** means any tangible property other than **Money** and **Securities**

Includes copyrighted material of Insurance Services Offices, Inc., with its permission.



## Crime Insurance
### Policy Form

that has intrinsic value.  **Other Property** does not include **Computer Programs**, **Electronic Data** or any property specifically excluded under this Policy.

X.  **Premises** means the interior of that portion of any building **You** occupy in conducting **Your** business.

Y.  **Robbery** means the unlawful taking of property from the care and custody of a person by one who has:

   (i)  caused or threatened to cause that person bodily harm; or

   (ii)  committed an obviously unlawful act witnessed by that person.

Z.  **Safe Burglary** means the unlawful taking of:

   (i)  Property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior; or

   (ii)  A safe or vault from inside the **Premises**.

AA.  **Securities** means negotiable or nonnegotiable instruments or contracts representing either **Money** or property and includes:

   (i)  tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use;

   (ii)  casino chips issued by **You**; and

   (iii)  evidences of debt issued in connection with credit or charge cards, which cards are not issued by **You**;

but does not include **Money**.

BB.  **Subsidiary** means any corporation or limited liability company in which, on or prior to the effective date of this policy, **You** own or control directly, or through one or more **Subsidiaries**, more than fifty percent (50%) of the outstanding securities or voting rights representing the right to elect or appoint such entity's board of directors, board of trustees, board of managers or a functional equivalent.

CC.  **System Administration** means the performance of any security function including, but not limited to:

   (i)  defining authorized persons to access the system;

   (ii)  adding, deleting or changing **Account Codes** or passwords;

   (iii)  installing or deleting any system option which directs telephone call routing or adds, drops or moves telephone lines; or

   (iv)  any other activity allowed by a hardware or software-based system option that has been incorporated by a manufacturer or a vendor into a **Voice Computer System** provided the system is not intended for the sole use of the manufacturer or vendor.

DD.  **System Maintenance** means performing hardware and software installation,

Includes copyrighted material of Insurance Services Offices, Inc., with its permission.



# Crime Insurance
## Policy Form

diagnostic and correction and similar activities that are performed in the usual custom and practice by a manufacturer or vendor to establish or maintain the basic operational functionality of a **Voice Computer System**.

EE. **System Password** means a confidential and protected string of characters that identifies or authenticates a person and permits that person to gain access to **Your Voice Computer System** to perform **System Administration** or **System Maintenance** or a component thereof.

FF. **Theft** means the unlawful taking of property to the deprivation of the Insured. Solely with respect to Coverage A(3) Clients' Property, **Theft** shall mean the unlawful taking of property to the deprivation of a **Client**.

GG.    **Transfer Account** means an account maintained by **You** at a financial institution from which **You** can initiate the transfer, payment or delivery of **Money** or **Securities**:

   (i)   by means of electronic, telegraphic, cable, teletype, telefacsimile or telephone instructions communicated directly through an electronic funds transfer system; or

   (ii)  by means or written instructions (other than those described in Coverage B) establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

HH. **Vendor** means an entity that provides a service to **You** under a written agreement which includes a requirement to provide Crime or Fidelity insurance covering **Your** property in the care, custody and control of the **Vendor** and/or its **Employees** for a limit equal to or greater than that shown in the Declarations of this Policy under Coverage A(1) Employee Theft.  If such agreement is not valid or collectable then this Policy will respond only to that portion of loss which would have been excess of such requirement.

However, **Vendor** does not include any financial institution, asset manager, broker, dealer or armored motor vehicle company.

II. **Voice Computer System** means a computer system installed in one location which functions as a private branch exchange (PBX), voice mail processor, automated call attendant or provides a similar capability used for the direction or routing of telephone calls in a voice communications network.

JJ. **Watchperson** means any person retained by **You** specifically to have care and custody of property inside the **Premises** and who has no other duties.  However, **Watchperson** does not include an **Employee**.

KK. **We**, **Us** or **Our** means the insurance company shown in the Declarations.

LL. **You** or **Your** means:

   (i)   the Named Insured shown in the Declarations;

   (ii)  any **Subsidiary** thereof; and

Includes copyrighted material of Insurance Services Offices, Inc., with its permission.



## Crime Insurance
### Policy Form

(iii) solely with respect to Coverage A(2) ERISA, any **Employee Benefit Plan**.

**III. Exclusions**

This Policy does not cover:

A. **Acts Committed by You, Your Partners or Your Members**

Loss resulting from **Theft** or any other dishonest act committed by:

(i) **You**; or

(ii) any of **Your** partners or **Members**;

whether acting alone or in collusion with other persons.

B. **Acts of Employees Learned of by You Prior to the Policy Period**

Loss caused by an **Employee** if the **Employee** had also committed **Theft**, **Forgery** or any other dishonest act prior to the effective date of this Policy and **You** or an **Executive Employee** not in collusion with the **Employee**, learned of that **Theft, Forgery** or dishonest act prior to the Policy Period shown in the Declarations.

However, this provision shall not apply if the **Theft**, **Forgery** or other dishonest act occurred prior to the **Employee** becoming **Your Employee** and the amount of such act did not exceed $10,000.

C. **Acts of Employees, Managers, Directors, Trustees or Representatives**

Loss resulting from **Theft**, **Forgery** or any other dishonest act committed by any of **Your Employees**, **Managers**, directors, trustees or authorized representatives:

(i) whether acting alone or in collusion with other persons; or

(ii) while performing services for **You** or otherwise;

except when covered under Coverage A Fidelity and H Virus and Licensing Violations.

D. **Confidential Information**

Loss resulting from:

(i) the unauthorized disclosure of **Your** confidential information including, but not limited to, patents, trade secrets, processing methods or customer lists; or

(ii) the unauthorized use or disclosure of confidential information of another person or entity which is held by **You** including, but not limited to, financial information, personal information, credit card information or similar non-public information.

E. **Governmental Action**

Loss resulting from seizure or destruction of property by order of governmental authority.

Includes copyrighted material of Insurance Services Offices, Inc., with its permission.



## Crime Insurance
Policy Form

F. **Indirect Loss**

Loss that is an indirect result of an **Occurrence** covered by this Policy including, but not limited to, loss resulting from:

(i)   **Your** inability to realize income that **You** would have realized had there been no loss of or damage to **Money**, **Securities** or **Other Property**.

(ii)   payment of damages of any type for which **You** are legally liable.  But, **We** will pay compensatory damages arising directly from a loss covered under this Policy.

(iii)   payment of costs, fees or other expenses **You** incur in establishing the existence or the amount of loss under this Policy except when covered under Coverage I Expense.

G. **Legal Fees, Costs and Expenses**

Fees, costs and expenses incurred by **You** which are related to any legal action, except when covered under Coverage B Forgery or Alteration or Coverage G Identity Fraud Expense.

H. **Nuclear Hazard**

Loss or damage resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

I. **War or Military Action**

Loss or damage resulting from:

(i)   war, including undeclared or civil war;

(ii)   warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(iii)   insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

Coverage A Fidelity does not cover:

J. **Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

(i)   an inventory computation; or

(ii)   a profit and loss computation.

However, where **You** establish wholly apart from such computations that **You** have sustained a loss, then **You** may offer **Your** inventory records and actual physical count of inventory in support of the amount of loss claimed.

K. **Trading**

Includes copyrighted material of Insurance Services Offices, Inc., with its permission.



# Crime Insurance
## Policy Form

Loss resulting from trading, whether in **Your** name or in a genuine or fictitious account.  Provided, however, that this exclusion shall not apply to direct losses caused by **Theft** and/or **Forgery** which result in improper financial gain to an **Employee** (direct losses as used herein shall mean only the amount of improper financial gain to such **Employee**, which shall not include salary, commissions, fees or other compensation, including, but not limited to promotions and raises associated with employment, paid by **You** to such **Employee**).

Coverage C Inside and Outside the Premises does not cover:

L.  **Accounting or Arithmetical Errors or Omissions**

Loss resulting from accounting or arithmetical errors or omissions.

M.  **Exchanges or Purchases**

Loss resulting from the giving or surrendering of property in any exchange or purchase.

N.  **Fire**

Loss or damage resulting from fire, however caused, except:

(i)   Loss of or damage to **Money** and **Securities**; and

(ii)  Loss from damage to a safe or vault.

O.  **Kidnap, Ransom and Extortion**

Loss of **Money**, **Securities** or **Other Property** resulting directly or indirectly from kidnap, extortion or ransom payments surrendered to any person as a result of a threat, including, but not limited to a threat of bodily harm, property damage, denial of service, virus or other malicious instruction, product contamination and/or dissemination of confidential information.

P.  **Money Operated Devices**

Loss of property contained in any money operated device unless the amount of **Money** deposited in it is recorded by a continuous recording instrument in the device.

Q.  **Motor Vehicles or Equipment and Accessories**

Loss of or damage to motor vehicles, trailers or semi-trailers or equipment and accessories attached to them.

R.  **Vandalism**

Loss from damage to the **Premises** or its exterior, or to any safe, vault, cash register, cash box, cash drawer or **Other Property** by vandalism or malicious mischief.

S.  **Voluntary Parting of Title to or Possession of Property**

Loss resulting from **Your**, or anyone acting on **Your** express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession

Includes copyrighted material of Insurance Services Offices, Inc., with its permission.



## Crime Insurance
Policy Form

of any property.

Coverage D Computer and Funds Transfer Fraud does not cover:

T. **Credit Card Transactions**

Loss resulting from the use or purported use of credit, debit, charge, access, convenience, identification, stored-value or other cards or the information contained on such cards.

U. **Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

(i)   an inventory computation; or

(ii)  a profit and loss computation.

However, where **You** establish wholly apart from such computations that **You** have sustained a loss, then **You** may offer **Your** inventory records and actual physical count of inventory in support of the amount of loss claimed.

Coverage H Virus and Licensing Violations does not cover:

V. **Errors or Omissions**

Loss resulting from errors or omissions in the design, programming or processing of **Computer Programs** or **Electronic Data**.

W. **Fraudulent Preparation or Input**

Loss resulting from the fraudulent preparation or input of **Electronic Data** or **Computer Programs.**

**IV.  Limit of Insurance**

The most **We** will pay for all loss resulting directly from an **Occurrence** is the applicable Limit of Insurance shown in the Declarations.

If any loss is covered under more than one Coverage, the most **We** will pay for such loss shall not exceed the largest Limit of Insurance available under any one of those Coverages.  However, this provision does not apply to Coverage A(2) ERISA.

**V.  Deductible**

**We** will not pay for loss resulting directly from an **Occurrence** unless the amount of loss exceeds the Deductible Amount shown in the Declarations.  **We** will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance.

**VI.  Conditions**

Conditions applicable to all Coverages:

A. **Additional Premises or Employees**

If, while this Policy is in force, **You** establish any additional **Premises** or hire additional **Employees**, other than through consolidation or merger with, or

Includes copyrighted material of Insurance Services Offices, Inc., with its permission.



# Crime Insurance
## Policy Form

purchase or acquisition of assets or liabilities of, another entity, such **Premises** and **Employees** shall automatically be covered under this Policy.  Notice to **Us** of an increase in the number of **Premises** or **Employees** need not be given and no additional premium need be paid for the remainder of the Policy Period shown in the Declarations.

B. **Cancellation**

   (i)   The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to **Us** advance written notice of cancellation.

   (ii)  **We** may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   (1)   15 days before the effective date of cancellation if **We** cancel for non-payment of premium; or

   (2)   60 days before the effective date of cancellation if **We** cancel for any other reason.

   (iii) **We** will mail or deliver **Our** notice to the first Named Insured's last mailing address known to **Us**.

   (iv)  Notice of cancellation will state the effective date of cancellation.  The Policy Period will end on that date.

   (v)   If this policy is cancelled, **We** will send the first Named Insured any premium refund due.  If **We** cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if **We** have not made or offered a refund.

   (vi)  If notice is mailed, proof of mailing will be sufficient proof of notice.

C. **Changes**

   This Policy contains all the agreements between **You** and **Us** concerning the insurance afforded.  The First Named Insured shown in the Declarations is authorized to make changes in the terms of this Policy with **Our** consent.  This Policy's terms can be amended or waived only by endorsement issued by **Us** and made a part of this Policy.

D. **Concealment, Misrepresentation or Fraud**

   This Policy is void in any case of fraud by **You** as it relates to this Policy at any time.  It is also void if **You**, at any time, intentionally conceal or misrepresent a material fact concerning:

   (i)   this Policy;

   (ii)  the property covered under this Policy;

   (iii) **Your** interest in the property covered under this Policy; or

   (iv)  a claim under this Policy.

Includes copyrighted material of Insurance Services Offices, Inc., with its permission.



# Crime Insurance
## Policy Form

E.  **Consolidation – Merger or Acquisition**

(i)  Except as provided in Paragraph (ii), if **You** consolidate or merge with, or purchase or acquire the assets or liabilities of, another entity:

(1)  **You** must give **Us** written notice as soon as possible and obtain **Our** written consent to extend the coverage provided by this Policy to such consolidated or merged entity or such purchased or acquired assets or liabilities.  **We** may condition **Our** consent by requiring payment of an additional premium; but

(2)  For the first 90 days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, the coverage provided by this Policy shall apply to such consolidated or merged entity or such purchased or acquired assets or liabilities, provided that all **Occurrences** causing or contributing to a loss involving such consolidation, merger or purchase or acquisition of assets or liabilities, must take place after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities.

(ii)  For entities **You** acquire in which **You** own greater than fifty percent (50%) of the voting stock or voting rights, coverage under this Policy shall automatically become effective on the date of such acquisition with no additional premium required, provided:

(1)  All **Occurrences** causing or contributing to a loss involving the acquired entity must take place after the effective date of such acquisition; and

(2)  The assets of the acquired entity do not exceed thirty five percent (35%) of **Your** total assets as reflected in **Your** most recent calendar quarter consolidated financial statements immediately preceding the effective date of the Policy.

F.  **Cooperation**

**You** must cooperate with **Us** in all matters pertaining to this Policy as stated in its terms and conditions.

G.  **Duties in the Event of Loss**

After **You** or an **Executive Employee Discovers** a loss or a situation that may result in loss of or damage to **Money**, **Securities** or **Other Property** that, in **Your** best estimate, exceeds 50% of the Deductible Amount shown in the Declarations, **You** must:

(i)  notify **Us** as soon as practicable and in no event later than 90 days after **Discovery**.  If **You** have reason to believe that any loss (except for loss covered under Coverage A Fidelity) involves a violation of law, **You** must also notify the local law enforcement authorities.

(ii)  submit to examination under oath at **Our** request and give **Us** a signed statement of **Your** answers.

Includes copyrighted material of Insurance Services Offices, Inc., with its permission.



# Crime Insurance
Policy Form

(iii)   produce for **Our** examination all pertinent records.

(iv)   give **Us** a detailed, sworn proof of loss within 120 days.

(v)   cooperate with **Us** in the investigation and settlement of any claim.

**You** must send **Us**, within 60 days after **Our** request, receipts, bills or other records that support any claim for **Identity Fraud Expenses** covered under Coverage G Identity Fraud Expense.

H.   **Examination of Your Books and Records**

**We** may examine and audit **Your** books and records as they relate to this Policy at any time during the Policy Period shown in the Declarations and up to 3 years afterward.

I.   **Extended Period to Discover Loss**

**We** will pay for loss **You** sustained prior to the effective date of cancellation of this Policy, which is **Discovered** by **You** or an **Executive Employee**:

(i)   No later than 60 days from the date of that cancellation.  However, this extended period to **Discover** loss terminates immediately upon the effective date of any other insurance obtained by **You**, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

(ii)   No later than 1 year from the date of that cancellation with regard to any **Employee Benefit Plans** under Coverage A(2) ERISA.

J.   **Inspections and Surveys**

(i)   **We** have the right to:

(1)   Make inspections and surveys at any time;

(2)   Give **You** reports on the conditions **We** find; and

(3)   Recommend changes.

(ii)   **We** are not obligated to make any inspections, surveys, reports or recommendations and any such actions **We** do undertake relate only to insurability and the premiums to be charged.  **We** do not make safety inspections.  **We** do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public.  And **We** do not warrant that conditions:

(1)   Are safe or healthful; or

(2)   Comply with laws, regulations, codes or standards.

(iii)   This condition applies not only to **Us**, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

K.   **Joint Insured**

(i)   The first Named Insured will act for itself and for every other Insured for all

Includes copyrighted material of Insurance Services Offices, Inc., with its permission.



## Crime Insurance
Policy Form

purposes of this Policy.  If the first Named Insured ceases to be covered, then the largest **Subsidiary**, by asset size, will become the first Named Insured.

(ii) If any Insured, or partner, **Member** or officer of that Insured has knowledge of any information relevant to this Policy, that knowledge is considered knowledge of every Insured.

(iii) An **Employee** of any Insured is considered an **Employee** of every Insured.

(iv) If this Policy or any of its coverages is cancelled as to any Insured, loss sustained by that Insured is covered only if it is **Discovered** by **You** or an **Executive Employee**:

(1) No later than 60 days from the date of that cancellation.  However, this extended period to **Discover** loss terminates immediately upon the effective date of any other insurance obtained by that Insured, whether from **Us** or another insurer, replacing in whole or in part the coverage afforded under this Policy, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

(2) No later than 1 year from the date of that cancellation with regard to any **Employee Benefit Plan(s)** covered under Coverage A(2) ERISA.

(v) **We** will not pay more for loss sustained by more than one Insured than the amount **We** would pay if all such loss had been sustained by one Insured except as provided in Coverage A(2) ERISA.

(vi) Payment by **Us** to the first Named Insured for loss sustained by any Insured, other than an **Employee Benefit Plan**, shall fully release **Us** on account of such loss.  Payment by **Us** to any **Employee Benefit Plan(s)** for loss sustained by any **Employee Benefit Plan(s)**, shall fully release **Us** on account of such loss.

L. **Legal Action Against Us**

**You** may not bring any legal action against **Us** involving loss:

(i) unless **You** have complied with all the terms of this Policy;

(ii) until 90 days after **You** have filed proof of loss with **Us**; and

(iii) unless brought within 2 years from the date **You** or an **Executive Employee Discovered** the loss.

If any limitation in this Condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

M. **Liberalization**

If **We** adopt any revision that would broaden the coverage under this Policy without additional premium within 45 days prior to or during the Policy Period shown in the Declarations, the broadened coverage will immediately apply to this Policy.

Includes copyrighted material of Insurance Services Offices, Inc., with its permission.



## Crime Insurance
### Policy Form

N. **Other Insurance**

If other valid and collectible insurance is available to **You** for loss covered under this policy, **We** will only pay for the amount of loss that exceeds the Limit of Insurance and Deductible Amount of that other insurance, whether **You** can collect on it or not.  **Our** payment for loss is subject to the terms and conditions of this Policy.

However, if loss covered under this policy is subject to a Deductible, **We** will reduce the Deductible Amount shown in the Declarations by the sum total of all such other insurance plus any Deductible Amount applicable to that other insurance.

O. **Ownership of Property; Interests Covered**

With respect to Coverage A(1) Employee Theft and A(4) Vendor Theft, the property covered under this Policy is limited to property that **You** own or lease;

With respect to Coverage A(3) Clients' Property, the property covered under this Policy is limited to property:

(i)   that **Your Client** owns or leases; or

(ii)  that **Your Client** holds for others whether or not **Your Client** is legally liable for the loss of such property.

With respect to all other coverages, the property covered under this Policy is limited to property:

(i)   that **You** own or lease; or

(ii)  that **You** hold for others whether or not **You** are legally liable for the loss of such property.

However, this Policy is for **Your** benefit only.  It provides no rights or benefits to any other person or organization.  Any claim for loss that is covered under this Policy must be presented by **You**.

P. **Policy Bridge – Discovery Replacing Loss Sustained**

If this Policy replaces insurance that provided **You** with an extended period of time after cancellation in which to discover loss and which did not terminate at the time this Policy became effective:

(i)   **We** will not pay for any loss that occurred during the Policy Period of that prior insurance which is **Discovered** by **You** or an **Executive Employee** during the extended period to **Discover** loss, unless the amount of loss exceeds the Limit of Insurance and Deductible Amount of that prior insurance.  In that case, **We** will pay for the excess loss subject to the terms and conditions of this Policy.

(ii)  However, any payment **We** make for the excess loss will not be greater than the difference between the Limit of Insurance and Deductible Amount of that prior insurance and the Limit of Insurance shown in the Declarations.  **We** will

Includes copyrighted material of Insurance Services Offices, Inc., with its permission.

Page 21 of 24

CRI P001 CW (06/10)

41



## Crime Insurance
### Policy Form

not apply the Deductible Amount shown in the Declarations to this excess loss.

**Q. Premiums**

The first Named Insured shown in the Declarations:

(i)   is responsible for the payment of all premiums; and

(ii)  will be the payee for any return premiums **We** pay.

**R. Records**

**You** must keep records of all property covered under this Policy so that **We** can verify the amount of any loss.

**S. Recoveries**

(i)   Any recoveries, whether effected before or after any payment under this Policy, whether made by **Us** or **You**, shall be applied net of the expense of such recovery:

(1)  First, to **You** in satisfaction of **Your** covered loss in excess of the amount paid under this Policy;

(2)  Second, to **Us** in satisfaction of amounts paid in settlement of **Your** claim;

(3)  Third, to **You** in satisfaction of any Deductible Amount; and

(4)  Fourth, to **You** in satisfaction of any loss not covered under this Policy.

(ii)  Recoveries do not include any recovery:

(1)  From insurance, suretyship, reinsurance, security or indemnity taken for **Our** benefit; or

(2)  Of original **Securities** after duplicates of them have been issued.

**T. Territory**

Where legally permissible, this Policy covers loss that **You** sustain resulting directly from an **Occurrence** taking place anywhere in the world.

**U. Transfer of Your Rights and Duties Under This Policy**

**Your** rights and duties under this Policy may not be transferred without **Our** written consent except in the case of death of an individual Named Insured.

If **You** die, **Your** rights and duties will be transferred to **Your** legal representative but only while acting within the scope of duties as **Your** legal representative. Until **Your** legal representative is appointed, anyone having proper temporary custody of **Your** property will have **Your** rights and duties but only with respect to that property.

**V. Transfer of Your Rights of Recovery Against Others to Us**

**You** must transfer to **Us** all **Your** rights of recovery against any person or

Includes copyrighted material of Insurance Services Offices, Inc., with its permission.



## Crime Insurance
Policy Form

organization for any loss **You** sustain and for which **We** have paid or settled. **You** must also do everything necessary to secure those rights and do nothing after loss to impair them.

W. **Valuation – Settlement**

(i) The value of any loss for purposes of coverage under this Policy shall be determined as follows:

(1) Loss of **Money** but only up to and including its face value.  **We** will, at **Your** option, pay for loss of **Money** issued by any country other than the United States of America:

(i) At face value in the **Money** issued by that country; or

(ii) In the United States of America dollar equivalent determined by the rate of exchange published in The Wall Street Journal on the day the loss was **Discovered**.

(2) Loss of **Securities** but only up to and including their face value at the close of business on the day the loss was **Discovered**.  At **Our** option, **We** may:

(i) Pay the market value of such **Securities** or replace them in kind, in which event **You** must assign to **Us** all **Your** rights, title and interest in and to those **Securities**; or

(ii) Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the **Securities**.  However, **We** will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

a. market value of the **Securities** at the close of business on the day the loss was **Discovered**; or

b. the Limit of Insurance applicable to the **Securities**.

(3) Loss of or damage to **Other Property** or loss from damage to the **Premises** or its exterior for the replacement cost of the property without deduction for depreciation.  However, **We** will not pay more than the least of the following:

(i) The cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose;

(ii) The amount **You** actually spend that is necessary to repair or replace the lost or damaged property; or

(iii) The Limit of Insurance applicable to the lost or damaged property.

With regard to paragraph (i) through (iii) above, **We** will not pay on a replacement cost basis for any loss or damage:

a. Until the lost or damaged property is actually repaired or

Includes copyrighted material of Insurance Services Offices, Inc., with its permission.

CRI P001 CW (06/10)



## Crime Insurance
Policy Form

        replaced; and

    b.  Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

    If the lost or damaged property is not repaired or replaced, **We** will pay on an actual cash value basis.

(ii)  **We** will, at **Our** option, settle loss or damage to property other than **Money**:

    (1)  In the **Money** of the country in which the loss or damage occurred; or

    (2)  In the United States of America dollar equivalent of the **Money** of the country in which the loss or damage occurred determined by the rate of exchange published in The Wall Street Journal on the day the loss was **Discovered**.

(iii)  Any property that **We** pay for or replaces becomes **Our** property.

Includes copyrighted material of Insurance Services Offices, Inc., with its permission.



**Endorsement 1**

NAMED INSURED: FriendFinder Networks, Inc.

**E9647.1 Subsidiary Definition Amended**                                   Page 1 of 1

**This endorsement modifies insurance provided under the CRIME INSURANCE Policy Form whether written as a standalone policy or as a module attached to another policy.**

1. In Clause II. **Definitions**, the definition of **Subsidiary** is deleted in its entirety and replaced with the following:

BB. **Subsidiary** means any corporation or limited liability company in which, on or prior to the effective date of this Policy, **You** own or control directly, or through one or more **Subsidiaries**, more than fifty percent (50%) of the outstanding securities or voting rights representing the right to elect or appoint such entity's board of directors, board of trustees, board of managers or a functional equivalent.

However, this Policy does not cover Loss sustained by any **Subsidiary** occurring at any time during which such entity was not a **Subsidiary**.

All other terms and conditions remain unchanged.

CRI E9647 CW (10/12)

Endorsement effective: 12/20/2016            Policy No.:        UC21870977.16
Endorsement No:        1                      Processed Date: 12/19/2016

By : Carl Bach
(Appointed Representative)



### Endorsement 2

NAMED INSURED: FriendFinder Networks, Inc.

**E9703.1 California Amendatory Endorsement**                    Page 1 of 3

**This endorsement modifies insurance provided under the CRIME INSURANCE Policy Form whether written as a standalone policy or as a module attached to another policy.**

In consideration of the premium charged, it is understood and agreed that the policy is modified as follows:

1.   In the **CONDITIONS** Clause, paragraph (ii) and (iii) of B. **Cancellation** are replaced by the following:

    (ii)   **All Policies In Effect For 60 Days Or Less**
        If this policy has been effect for 60 days or less, and is not a renewal of a policy **We** have previously issued, **We** may cancel this policy by mailing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:
        a.   10 days before the effective date of cancellation if **We** cancel for:
           (1)  Nonpayment of premium; or
           (2)  Discovery of fraud by:
              (i)   Any insured or his or her representative in obtaining this policy; or
              (ii)  **You** or **Your** representative in pursuing a claim under this policy.
        b.   30 days before the effective date of cancellation if **We** cancel for any other reason.
    (iii)  **All Policies In Effect For More Than 60 Days**
        a.   If this policy has been in effect for more than 60 days, or is a renewal of a policy **We** issued, **We** may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:
           (1)  Nonpayment of premium, including payment due on a prior policy **We** issued and due during the current policy term covering the same risks.
           (2)  Discovery of fraud or material misrepresentation by:
              (i)   Any insured or his or her representative in obtaining this policy; or
              (ii)  **You** or **Your** representative in pursuing a claim under this policy.
           (3)  A judgment by a court or an administrative tribunal that **You** have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.
           (4)  Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by **You** or **Your** representative, which materially increase any of the risks insured against.
           (5)  Failure by **You** or **Your** representative to implement reasonable loss control requirements, agreed to by **You** as a condition of policy issuance, or which were conditions precedent to **Our** use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.
           (6)  A determination by the Commissioner of Insurance that the:
              (i)   Loss of, or changes in, **Our** reinsurance covering all or part of the risk would threaten **Our** financial integrity or solvency; or
              (ii)  Continuation of the policy coverage would:
                  1.   Place **Us** in violation of California law or the laws of the state where **We** are domiciled; or
                  2.   Threaten **Our** solvency.



### Endorsement 2

NAMED INSURED: FriendFinder Networks, Inc.

**E9703.1 California Amendatory Endorsement**                                      Page 2 of 3

    (7) A change by **You** or **Your** representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

  b. **We** will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

    (1) 10 days before the effective date of cancellation if **We** cancel for nonpayment of premium or discovery of fraud; or

    (2) 30 days before the effective date of cancellation if **We** cancel for any other reason listed in Paragraph (iii)a.

2. In the **CONDITIONS** Clause, the following is added to B. **Cancellation** and supersedes any other provision to the contrary:

  (vii) **Nonrenewal**

    a. Subject to the provisions of Paragraph b., if **We** elect not to renew this policy, **We** will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.
    **We** will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

    b. **We** are not required to send notice of nonrenewal in the following situations:

      (1) If the transfer or renewal of a policy, without any changes in terms, conditions, or rates, is between **Us** and a member of **Our** insurance group.

      (2) If the policy has been extended for 90 days or less, provided that notice has been given in accordance with Paragraph a.

      (3) If **You** have obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

      (4) If the policy is for a period of no more than 60 days and **You** are notified at the time of issuance that it will not be renewed.

      (5) If the first Named Insured requests a change in the terms and conditions or risks covered by the policy within 60 days of the end of the policy period.

      (6) If **We** have made a written offer to the first Named Insured, in accordance with the time frames shown in Paragraph a., to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.



**Endorsement 2**

NAMED INSURED: FriendFinder Networks, Inc.

**E9703.1 California Amendatory Endorsement**                    Page 3 of 3

3.   In the **CONDITIONS** Clause, the following is added to paragraph W. **Valuation - Settlement**:

> Actual cash value is calculated as the amount it would cost to repair or replace covered property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence.  Actual cash value applies to valuation of covered property regardless of whether that property has sustained partial or total loss or damage.
> The actual cash value of the lost or damaged property may be significantly less than its replacement cost.

All other terms and conditions remain unchanged.

CRI E9703 CA (06/10)    Includes copyrighted material of Insurance Services Offices, Inc., with its permission.

Endorsement effective: 12/20/2016          Policy No.:        UC21870977.16
Endorsement No:          2                 Processed Date: 12/19/2016

By : Carl Bach
(Appointed Representative)



**Endorsement 3**

NAMED INSURED: FriendFinder Networks, Inc.

**E9649.1 ERISA Bond Coverage**                                                    Page 1 of 2

**This endorsement modifies insurance provided under the CRIME INSURANCE Policy Form whether written as a standalone policy or as a module attached to another policy.**

1.  Solely with regard to Insuring Agreement A: Fidelity, Part (2) ERISA, the Insurer listed in the Declarations is amended to read:

    FEDERATED MUTUAL INSURANCE COMPANY (A Mutual Company)
    121 East Park Square
    Owatonna, Minnesota 55060
    (888) 333-4949
    (507) 455-5200

2.  Federated Mutual Insurance Company Inc. shall have no liability under Section I., Insuring Agreements, of the Policy other than for loss or damage covered by Insuring Agreement A: Fidelity, Part (2) ERISA.

3.  Hiscox Insurance Company Inc. shall have no liability under the Policy for loss or damage covered by Insuring Agreement A: Fidelity, Part (2) ERISA.

4.  Section II., Definitions, Section III., Exclusions, Section IV., Limit of Liability, and Section VI., Conditions, shall also apply to the Insurer listed in this endorsement.

5.  Section VI., Conditions, Part B. Cancellation, is amended by adding the following:

    Any premium that **We** receive from **You** will be applied: first, to the premium charged for Insuring Agreement A: Fidelity, Part (2) ERISA, and second, to the premium charged for any other coverage provided under the Policy.  In the event **We** cancel or non-renew this Policy, **We** will provide separate notices of cancellation on behalf of Hiscox Insurance Company Inc. and Federated Mutual Insurance Company identifying the coverage being terminated.

6.  The "Total Premium" in the Declarations is amended to read as follows:

    | | |
    |---|---|
    | Premium for Crime Insurance excluding ERISA Bond: | $23,301.00 |
    | Premium for ERISA Bond (Coverage A(2)): | $   350.00 |
    | Total Commercial Crime Insurance Premium: | $23,651.00 |

CRI E9649 CW (02/14)



**Endorsement 3**

NAMED INSURED: FriendFinder Networks, Inc.

**E9649.1 ERISA Bond Coverage**                                          Page 2 of 2

7.  With regard to the coverage provided by this endorsement, the "IN WITNESS WHEREOF" clause to the Declarations is amended to include the following:

    IN WITNESS WHEREOF, Federated Mutual Insurance Company Inc. has caused this Policy to be signed by its President and Secretary, but this Policy shall not be effective unless also signed by the Insurer's duly authorized representative.


_____                      _____
President                                              Secretary


By: _____
(Appointed Representative)


All other terms and conditions remain unchanged.

CRI E9649 CW (02/14)



Endorsement effective: 12/20/2016          Policy No.:        UC21870977.16
Endorsement No:        3                    Processed Date: 12/19/2016

By : Carl Bach
(Appointed Representative)



### Endorsement 4

NAMED INSURED: FriendFinder Networks, Inc.

**E9654.1 Cyber Deception Endorsement**                                       Page 1 of 2

**This endorsement modifies insurance provided under the CRIME INSURANCE Policy Form whether written as a standalone policy or as a module attached to another policy.**

| **SCHEDULE** | | |
|---|---|---|
| | **Limit of Insurance** | **Deductible Amount** |
| **Cyber Deception** | $100,000 | $10,000 |

With regard to this Cyber Deception Endorsement, the provisions of the Policy to which this endorsement is attached apply, unless modified by this endorsement.

1.  The following additional Insuring Agreement is added to paragraph **I. Insuring Agreements** under **Coverage D:  Computer and Funds Transfer Fraud**:

    **Coverage D:  Computer and Funds Transfer Fraud**

    (3)  Cyber Deception

    **We** will pay for loss of **Money** or **Securities** directly resulting from **Cyber Deception** committed by a person falsely purporting to be a **Vendor**, **Client** or **Employee** and which results in **Your** transfer, payment or delivery of such **Money** or **Securities**.

2.  Solely with respect to the coverage provided by this Endorsement, definition HH. in paragraph **II. Definitions** is deleted in its entirety and replaced with the following:

    HH. **Vendor** means an entity that provides a service to **You** under a written agreement. However, **Vendor** does not include any financial institution, asset manager, broker-dealer or armored motor vehicle company.

3.  The following additional definition is added to paragraph **II. Definitions**:

    **Cyber Deception** means the intentional misleading or deception of an **Employee**, through social engineering, pretexting, phishing, spear phishing or any other confidence trick communicated by email, text, instant message, telephone or other electronic means.

4.  Solely with respect to the coverage provided by this Endorsement, paragraph **IV. Limit of Insurance** is deleted in its entirety and replaced with the following:

    The most **We** will pay for all loss resulting directly from an **Occurrence** of **Cyber Deception** is the Limit of Insurance shown in the Schedule.

CRI E9654 CW (10/14)



**Endorsement 4**

NAMED INSURED: FriendFinder Networks, Inc.

**E9654.1 Cyber Deception Endorsement**                    Page 2 of 2

5.   Solely with respect to the coverage provided by this Endorsement, paragraph **V. Deductible** is deleted in its entirety and replaced with the following:

**We** will not pay for loss resulting from **Cyber Deception** unless the amount of loss exceeds the Deductible Amount shown in the Schedule. **We** will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance.

CRI E9654 CW (10/14)

Endorsement effective: 12/20/2016          Policy No.:          UC21870977.16
Endorsement No:          4                 Processed Date: 12/19/2016

By : Carl Bach
(Appointed Representative)



**Endorsement 5**

NAMED INSURED: FriendFinder Networks, Inc.

**E9609.1 Executive Employee Amended**                                    Page 1 of 1

**This endorsement modifies insurance provided under the CRIME INSURANCE Policy Form whether written as a standalone policy or as a module attached to another policy.**

---
**SCHEDULE**

**Executive Employee**

**As used in Coverage B(3)**     ( ) **Adds To**
**Personal Accounts:**           ( ) **Replaces**

**As used in Coverage G**        ( ) **Adds To**
**Identity Fraud Expense:**      ( ) **Replaces**

**As used in the remainder of** ( ) **Adds To**
**the policy:**                  (X) **Replaces**   Risk Management Department and/or
                                                    Human Resources and/or
                                                    General Counsel and/or Internal Audit
                                 Department

---

The following either adds to or replaces (whichever is indicated in the Schedule) the definition of **Executive Employee** for those areas indicated in the Schedule.  Solely with respect to Coverage A(2) ERISA, **Executive Employee** shall continue to include a **Fiduciary**.

All other terms and conditions remain unchanged.

CRI E9609 CW (06/10)     Includes copyrighted material of Insurance Services Offices, Inc., with its permission.

Endorsement effective: 12/20/2016        Policy No.:      UC21870977.16
Endorsement No:        5                 Processed Date: 12/19/2016

By : Carl Bach
(Appointed Representative)



### Endorsement 6

NAMED INSURED: FriendFinder Networks, Inc.

**E9629.1 Prior Dishonesty Threshold Amended**                    Page 1 of 1

**This endorsement modifies insurance provided under the CRIME INSURANCE Policy Form whether written as a standalone policy or as a module attached to another policy.**

**SCHEDULE**

**Prior Dishonesty Threshold:**   $25,000

1.  The Acts of Employees Learned of By You Prior to the Policy Period Exclusion, is replaced with the following:

    This Policy does not cover:

    **Acts of Employees Learned of by You Prior to the Policy Period**

    Loss caused by an **Employee** if the **Employee** had also committed **Theft**, **Forgery** or any other dishonest act prior to the effective date of this Policy and **You** or any **Executive Employee** not in collusion with the **Employee**, learned of that **Theft**, **Forgery** or dishonest act prior to the Policy Period shown in the Declarations.

    However, this provision shall not apply if the **Theft**, **Forgery** or other dishonest act occurred prior to the **Employee** becoming **Your Employee** and the amount of such act did not exceed the amount specified in the Schedule.

2.  The Condition applicable to Coverage A and all subparts in paragraph **I. Insuring Agreements** is replaced with the following:

    The following Condition applies to Coverage A and all subparts:

    (i)  However, all subparts of Coverage A terminate as to any **Employee** as soon **You** or an **Executive Employee** not in collusion with the **Employee** learns of **Theft**, **Forgery** or any other dishonest act committed by the **Employee**:
    (1)  after becoming employed by **You**; or
    (2)  if such **Theft**, **Forgery** or dishonest act exceeded the amount specified in the Schedule, before becoming employed by **You**.

All other terms and conditions remain unchanged.

CRI E9629 CW (06/10)    Includes copyrighted material of Insurance Services Offices, Inc., with its permission.



Endorsement effective: 12/20/2016          Policy No.:       UC21870977.16
Endorsement No:        6                   Processed Date: 12/19/2016

By : Carl Bach
(Appointed Representative)

56



# ECONOMIC AND TRADE SANCTIONS POLICYHOLDER NOTICE

Hiscox is committed to complying with the U.S. Department of Treasury Office of Foreign Assets Control (OFAC) requirements. OFAC administers and enforces economic sanctions policy based on Presidential declarations of national emergency.  OFAC has identified and listed numerous foreign agents, front organizations, terrorists, and narcotics traffickers as Specially Designated Nationals (SDN's) and Blocked Persons.  OFAC has also identified Sanctioned Countries.  A list of Specially Designated Nationals, Blocked Persons and Sanctioned Countries may be found on the United States Treasury's web site http://www.treas.gov/offices/enforcement/ofac/.

Economic sanctions prohibit all United States citizens (including corporations and other entities) and permanent resident aliens from engaging in transactions with Specially Designated Nationals, Blocked Persons and Sanctioned Countries.  Hiscox may not accept premium from or issue a policy to insure property of or make a claim payment to a Specially Designated National or Blocked Person.  Hiscox may not engage in business transactions with a Sanctioned Country.

A Specially Designated National or Blocked Person is any person who is determined as such by the Secretary of Treasury.

A Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States.

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy may be rendered void from its inception with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

(1) Any insured under this Policy, or any person or entity claiming the benefits of such insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to US economic trade sanctions;

(2) Any claim or suit that is brought in a Sanctioned Country or by a Sanctioned Country government, where any action in connection with such claim or suit is prohibited by US economic or trade sanctions;

(3) Any claim or suit that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to US economic or trade sanctions;

(4) Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country government, where any activities related to such property are prohibited by US economic or trade sanctions; or

(5) Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to US economic or trade sanctions.

Please read your Policy carefully and discuss with your broker/agent or insurance professional.  You may also visit the US Treasury's website at http://www.treas.gov/offices/enforcement/ofac/.

# EXHIBIT  B

| | |
|---|---|
| **From:** | Michael Abelson |
| **Sent:** | Wednesday, May 23, 2018 12:43 PM |
| **To:** | 'rmccall@peabodyarnold.com'; 'adimatteo@peabodyarnold.com' |
| **Cc:** | Heather Mayer; 'anne.jarrell@hiscox.com'; 'clarissa.elam@hiscox.com' |
| **Subject:** | FriendFinder Networks, Inc. / Hiscox Insurance / Policy No. UC21870977.16 / Hiscox Ref #194001636 |
| | |
| **Importance:** | High |

Robert / Amanda –

We are coverage counsel to FriendFinder Networks, Inc. ("FFN"), the insured under the referenced Hiscox Policy.
We understand your firm is representing Hiscox in connection with its determination of policy benefits for FFN's pending claim.
If that understanding is incorrect, we request that you please direct this communique to Hiscox personnel responsible for FFN's coverage determination.
For tracking purposes (and to help expedite this matter), we've also copied Hiscox representatives, Anne Jarrell and Clarissa Elam.

As part of our work on FFN's file, it has come to our attention that the Santa Clara District Attorney's Office has filed a criminal proceeding against several wrongdoers implicated in FFN's claim, including Messrs. Lai, McKoon, Diec, and Luu.  The latter three have presented themselves to Santa Clara authorities for processing.  For his part, Wei Lai (FFN's former employee) appears to have fled to Thailand to avoid prosecution.  As matters stand, a plea hearing in the criminal action is scheduled for June 15th, and there is some hope/expectation that a discussion of restitution may arise either prior to, or in conjunction with, that forthcoming proceeding.  (As reported by FFN in its January 22, 2018 Preliminary Poof of Loss ("PPOL"), Messrs. Diec (Essential Clicks) and McKoon (Butec) previously floated the idea of a $500,000 settlement payment to FFN for themselves and their respective corporate interests.  Nothing ever came of that.)

Depending on Hiscox's coverage determination here, the insurer *may* have an interest in future restitutionary funds/payment by way of subrogation, offset, or otherwise.  To help FFN better determine its rights/responsibilities to Hiscox and others, we seek the prompt release of Hiscox's coverage position.  More than four months have passed since FFN submitted its PPOL and, thus far, no coverage determination has issued.  Likewise, Hiscox has not posed any requests for information to FFN bearing upon the facts/circumstances giving rise to the insured's loss.  That being so, Hiscox's coverage determination is now due, if not overdue.  See Cal. Ins. Reg. 2695.7(b) ("Upon receiving proof of claim, every insurer . . . shall immediately, but in no event more than forty (40) calendar days later, accept or deny the claim, in whole or in part.").

Understanding that information is still being collected by Hiscox's representatives regarding the extent of FFN's insured loss – for which the parties shall mutually reserve all rights – please promptly advise us of (a) Hiscox's coverage position regarding FFN's pending claim and, assuming coverage; (b) the insurer's position regarding potential, restitution discussions.  In light of the forthcoming criminal hearing on June 15th, Hiscox's prompt response is needed by FFN both to provide direction and to avoid prejudicing the insured's exercise of its rights.  Indeed, time is of the essence.

My thanks in advance for your attention to this matter.
My contact information is below. -- MBA



**Michael Bruce Abelson**
Abelson Herron Halpern LLP
333 South Grand Avenue, Suite 1550
Los Angeles, CA  90071
(213) 402-1900 - Main Number
(213) 402-1901 - Facsimile

(213) 402-1902 - Direct
mabelson@abelsonherron.com - Email
www.abelsonherron.com - Website

This email, and any attachments thereto, is intended only for use by addressees named herein and may contain legally privileged or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distr bution or copying of this email, and any attachments thereto, is strictly prohibited.  If you have received this email in error, please immediately notify me by telephone and permanently delete the original and any copy of this email and any printout thereof.

**ATTACHMENT CV-5012**

# CIVIL LAWSUIT NOTICE
*Superior Court of California, County of Santa Clara*
*191 North First St., San José, CA  95113*

CASE NUMBER: _____ 18CV332034 _____

<div style="border:1px solid">

## PLEASE READ THIS ENTIRE FORM

</div>

**PLAINTIFF** (the person suing):  Within 60 days after filing the lawsuit, you must serve each Defendant with the *Complaint, Summons,* an *Alternative Dispute Resolution (ADR) Information Sheet,* and a copy of this *Civil Lawsuit Notice,* and you must file written proof of such service.

---

**DEFENDANT** (The person sued):  **You must do each of the following to protect your rights:**

1. You must file a **written response** to the *Complaint, using the proper legal form or format,* in the Clerk's Office of the Court, within **30 days** of the date you were served with the *Summons* and *Complaint;*
2. You must serve by mail  a copy of your written response on the  Plaintiff's attorney or on the Plaintiff if Plaintiff has no attorney (to "serve by mail" means to have an adult other than yourself mail a copy); and
3. You must attend the first Case Management Conference.

   Warning:  If you, as the Defendant, do not follow these instructions, you may automatically lose this case.

---

**RULES AND FORMS:**  You must follow the California Rules of Court and the Superior Court of California, County of <_CountyName_> Local Civil Rules and use proper forms.  You can obtain legal information, view the rules and receive forms, free of charge, from the Self-Help Center at 201 North First Street, San José (408-882-2900 x-2926).

- State Rules and Judicial Council Forms:  www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms:  http://www.sccsuperiorcourt.org/civil/rule1toc.htm

**CASE MANAGEMENT CONFERENCE (CMC):**  You must meet with the other parties and discuss the case, in person or by telephone at least 30 calendar days before the CMC.  You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

*You or your attorney must appear at the CMC.  You may ask to appear by telephone – see Local Civil Rule 8.*

<div style="border:1px solid">

Your Case Management Judge is: _____ Zayner, Theodore C _____ Department: _____ 6 _____

The 1st CMC is scheduled for: (Completed by Clerk of Court)
Date: 10/30/2018 Time: 3:45 PM in Department: 6

The next CMC is scheduled for: (Completed by party if the 1st CMC was continued or has passed)
Date: _____ Time: _____ in Department: _____

</div>

**ALTERNATIVE DISPUTE RESOLUTION (ADR):**  If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

**WARNING:** Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

---

# SANTA CLARA COUNTY SUPERIOR COURT
# ALTERNATIVE DISPUTE RESOLUTION
# INFORMATION SHEET

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interests of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

### *What is ADR?*
ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and settlement conferences, among others forms.

### *What are the advantages of choosing ADR instead of litigation?*
ADR can have a number of advantages over litigation:

- **ADR can save time.** A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.

- **ADR can save money.** Attorney's fees, court costs, and expert fees can be reduced or avoided altogether.

- **ADR provides more participation.** Parties have more opportunities with ADR to express their interests and concerns, instead of focusing exclusively on legal rights.

- **ADR provides more control and flexibility.** Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

- **ADR can reduce stress.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

### *What are the main forms of ADR offered by the Court?*
 **Mediation** is an informal, confidential, flexible and non-binding process in the mediator helps the parties to understand the interests of everyone involved, and their practical and legal choices. The mediator helps the parties to communicate better, explore legal and practical settlement options, and reach an acceptable solution of the problem. The mediator does not decide the solution to the dispute; the parties do.

Mediation may be appropriate when:
- The parties want a non-adversary procedure
- The parties have a continuing business or personal relationship
- Communication problems are interfering with a resolution
- There is an emotional element involved
- The parties are interested in an injunction, consent decree, or other form of equitable relief

**Neutral evaluation**, sometimes called "Early Neutral Evaluation" or "ENE", is an informal process in which the evaluator, an experienced neutral lawyer, hears a compact presentation of both sides of the case, gives a non-binding assessment of the strengths and weaknesses on each side, and predicts the likely outcome. The evaluator can help parties to identify issues, prepare stipulations, and draft discovery plans. The parties may use the neutral's evaluation to discuss settlement.

Neutral evaluation may be appropriate when:
- The parties are far apart in their view of the law or value of the case
- The case involves a technical issue in which the evaluator has expertise
- Case planning assistance would be helpful and would save legal fees and costs
- The parties are interested in an injunction, consent decree, or other form of equitable relief

*-over-*

**Arbitration** is a less formal process than a trial, with no jury. The arbitrator hears the evidence and arguments of the parties and then makes a written decision. The parties can agree to binding or non-binding arbitration. In binding arbitration, the arbitrator's decision is final and completely resolves the case, without the opportunity for appeal. In non-binding arbitration, the arbitrator's decision could resolve the case, without the opportunity for appeal, unless a party timely rejects the arbitrator's decision within 30 days and requests a trial. Private arbitrators are allowed to charge for their time.

Arbitration may be appropriate when:

- The action is for personal injury, property damage, or breach of contract
- Only monetary damages are sought
- Witness testimony, under oath, needs to be evaluated
- An advisory opinion is sought from an experienced litigator (if a non-binding arbitration)

**Civil Judge ADR** allows parties to have a mediation or settlement conference with an experienced judge of the Superior Court. Mediation is an informal, confidential, flexible and non-binding process in which the judge helps the parties to understand the interests of everyone involved, and their practical and legal choices. A settlement conference is an informal process in which the judge meets with the parties or their attorneys, hears the facts of the dispute, helps identify issues to be resolved, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations. The request for mediation or settlement conference may be made promptly by stipulation (agreement) upon the filing of the Civil complaint and the answer. There is no charge for this service.

Civil Judge ADR may be appropriate when:

- The parties have complex facts to review
- The case involves multiple parties and problems
- The courthouse surroundings would be helpful to the settlement process

**Special masters and referees** are neutral parties who may be appointed by the court to obtain information or to make specific fact findings that may lead to a resolution of a dispute.
Special masters and referees can be particularly effective in complex cases with a number of parties, like construction disputes.

**Settlement conferences** are informal processes in which the neutral (a judge or an experienced attorney) meets with the parties or their attorneys, hears the facts of the dispute, helps identify issues to be resolved, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations.
Settlement conferences can be effective when the authority or expertise of the judge or experienced attorney may help the parties reach a resolution.

*What kind of disputes can be resolved by ADR?*
Although some disputes must go to court, almost any dispute can be resolved through ADR. This includes disputes involving business matters; civil rights; collections; corporations; construction; consumer protection; contracts; copyrights; defamation; disabilities; discrimination; employment; environmental problems; fraud; harassment; health care; housing; insurance; intellectual property; labor; landlord/tenant; media; medical malpractice and other professional negligence; neighborhood problems; partnerships; patents; personal injury; probate; product liability; property damage; real estate; securities; sports; trade secret; and wrongful death, among other matters.

*Where can you get assistance with selecting an appropriate form of ADR and a neutral for your case, information about ADR procedures, or answers to other questions about ADR?*

*Contact:*

Santa Clara County Superior Court                    Santa Clara County DRPA Coordinator
ADR Administrator                                    408-792-2784
408-882-2530

**CM-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>ABELSON HERRON HALPERN LLP<br>Michael Bruce Abelson (SBN130739); Heather L. Mayer (SBN210544)<br>333 South Grand Avenue, Suite 1550<br>Los Angeles, California 90071<br>TELEPHONE NO: (213) 402-1900    FAX NO.: (213) 402-1901<br>ATTORNEY FOR *(Name):* Plaintiff FrienFinder Networks Inc. | **FOR COURT USE ONLY**<br><br>**Electronically Filed**<br>**by Superior Court of CA,**<br>**County of Santa Clara,**<br>**on 7/19/2018 1:16 PM**<br>**Reviewed By: R. Tien**<br>**Case #18CV332034**<br>**Envelope: 1741965** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
STREET ADDRESS: 191 North First Street
MAILING ADDRESS: - same as above -
CITY AND ZIP CODE: San Jose 95113
BRANCH NAME: Downtown Superior Court (DTS)

CASE NAME:
FriendFinder Networks Inc.  v. Hiscox Insurance Company

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER:<br>18CV332034 |
|---|---|---|---|---|
| ☑ **Unlimited**<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ **Limited**<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ **Counter**  ☐ **Joinder**<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation**<br>**(Cal. Rules of Court, rules 3.400–3.403)** |
|---|---|---|
| ☐ Auto (22)<br>☐ Uninsured motorist (46) | ☐ Breach of contract/warranty (06)<br>☐ Rule 3.740 collections (09)<br>☐ Other collections (09)<br>☑ Insurance coverage (18)<br>☐ Other contract (37) | ☐ Antitrust/Trade regulation (03)<br>☐ Construction defect (10)<br>☐ Mass tort (40)<br>☐ Securities litigation (28) |
| **Other PI/PD/WD (Personal Injury/Property**<br>**Damage/Wrongful Death) Tort**<br>☐ Asbestos (04)<br>☐ Product liability (24)<br>☐ Medical malpractice (45)<br>☐ Other PI/PD/WD (23) | **Real Property**<br>☐ Eminent domain/Inverse<br>condemnation (14)<br>☐ Wrongful eviction (33)<br>☐ Other real property (26) | ☐ Environmental/Toxic tort (30)<br>☐ Insurance coverage claims arising from the<br>above listed provisionally complex case<br>types (41)<br>**Enforcement of Judgment** |
| **Non-PI/PD/WD (Other) Tort**<br>☐ Business tort/unfair business practice (07)<br>☐ Civil rights (08)<br>☐ Defamation (13)<br>☐ Fraud (16)<br>☐ Intellectual property (19)<br>☐ Professional negligence (25)<br>☐ Other non-PI/PD/WD tort (35) | **Unlawful Detainer**<br>☐ Commercial (31)<br>☐ Residential (32)<br>☐ Drugs (38)<br>**Judicial Review**<br>☐ Asset forfeiture (05)<br>☐ Petition re: arbitration award (11) | ☐ Enforcement of judgment (20)<br>**Miscellaneous Civil Complaint**<br>☐ RICO (27)<br>☐ Other complaint *(not specified above)* (42)<br>**Miscellaneous Civil Petition**<br>☐ Partnership and corporate governance (21)<br>☐ Other petition *(not specified above)* (43) |
| **Employment**<br>☐ Wrongful termination (36)<br>☐ Other employment (15) | ☐ Writ of mandate (02)<br>☐ Other judicial review (39) | |

2. This case ☐ is  ☑ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties    d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel    e. ☐ Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve        in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence    f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary    b. ☑ nonmonetary; declaratory or injunctive relief    c. ☑ punitive
4. Number of causes of action *(specify):* Three (3)
5. This case ☐ is  ☑ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: July 17, 2018

Heather L. Mayer
(TYPE OR PRINT NAME)                                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |